FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 14, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BENJAMIN P.,[1] | No. 1:20-cv-03212-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | ECF Nos. 15, 16 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 15, 16.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 16.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

7    404.1502(a), 416.920(a).  Further, a district court "may not reverse an ALJ's

8    decision on account of an error that is harmless." *Id*.  An error is harmless "where

9    it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at

10   1115 (quotation and citation omitted).  The party appealing the ALJ's decision

11   generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*,

12   556 U.S. 396, 409-10 (2009).

13                      **FIVE-STEP EVALUATION PROCESS**

14   A claimant must satisfy two conditions to be considered "disabled" within

15   the meaning of the Social Security Act.  First, the claimant must be "unable to

16   engage in any substantial gainful activity by reason of any medically determinable

17   physical or mental impairment which can be expected to result in death or which

18   has lasted or can be expected to last for a continuous period of not less than twelve

19   months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

20   impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

1  work[,] but cannot, considering his age, education, and work experience, engage in

2  any other kind of substantial gainful work which exists in the national economy."

3  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

4      The Commissioner has established a five-step sequential analysis to

5  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

6  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

7  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

8  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

9  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

10  404.1520(b), 416.920(b).

11      If the claimant is not engaged in substantial gainful activity, the analysis

12  proceeds to step two.  At this step, the Commissioner considers the severity of the

13  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

14  claimant suffers from "any impairment or combination of impairments which

15  significantly limits [his or her] physical or mental ability to do basic work

16  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

17  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

18  however, the Commissioner must find that the claimant is not disabled.  *Id.*

19      At step three, the Commissioner compares the claimant's impairment to

20  severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

1    a person from engaging in substantial gainful activity.  20 C.F.R. §§

2    404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

3    severe than one of the enumerated impairments, the Commissioner must find the

4    claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

5         If the severity of the claimant's impairment does not meet or exceed the

6    severity of the enumerated impairments, the Commissioner must pause to assess

7    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

8    defined generally as the claimant's ability to perform physical and mental work

9    activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

10   404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

11   analysis.

12        At step four, the Commissioner considers whether, in view of the claimant's

13   RFC, the claimant is capable of performing work that he or she has performed in

14   the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

15   If the claimant is capable of performing past relevant work, the Commissioner

16   must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

17   If the claimant is incapable of performing such work, the analysis proceeds to step

18   five.

19        At step five, the Commissioner considers whether, in view of the claimant's

20   RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 31, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of December 30, 2017.  Tr. 15, 61, 180-88, 190-95.  The applications were denied initially and on reconsideration.  Tr. 112-14, 118-31.  Plaintiff

ORDER - 6

appeared before an administrative law judge (ALJ) on June 5, 2020.  Tr. 31-60.

On June 30, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2023, has not engaged in substantial gainful activity since December 30, 2017.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis of the bilateral hips, status-post hip replacement; lumbar degenerative disc disease; affective disorder; and anxiety disorder.  Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  [Plaintiff] can occasionally balance, stoop, kneel, and crouch.  [Plaintiff] can never crawl.  [Plaintiff] should avoid concentrated exposure to extreme cold and vibration. [Plaintiff] should avoid all exposure to workplace hazards.  [Plaintiff] should be allowed to alternate positions, between standing and sitting, as needed every half hour.  [Plaintiff] can perform simple, routine tasks.  [Plaintiff] can have occasional interaction with coworkers and the general public.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work.  Tr. 24.  At step five, the ALJ found that, considering Plaintiff's

ORDER - 7

age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as document preparer, addresser, and surveillance system monitor.  Tr. 25.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of December 30, 2017, through the date of the decision.  *Id.*

On October 28, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 7.

ORDER - 8

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Caleb Knight, PA-C, and K. Mansfield-Blair, Ph.D.  ECF No. 15 at 10-15.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

ORDER - 9

1 (including, but not limited to, "evidence showing a medical source has familiarity

2 with the other evidence in the claim or an understanding of our disability

3 program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-

4 (5), 416.920c(c)(1)-(5).

5       Supportability and consistency are the most important factors, and therefore

6 the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

7 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

8 the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

15 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not

16 required to, explain how the other factors were considered.  20 C.F.R. §§

17 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions

18 or prior administrative findings "about the same issue are both equally well-

19 supported ... and consistent with the record ... but are not exactly the same," the

20 ALJ is required to explain how "the other most persuasive factors in paragraphs

ORDER - 10

(c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether the "clear and convincing" and "specific and legitimate" standards still apply.  ECF No. 15 at 10; ECF No. 16 at 3-7.  "It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'"  *Gary T.*, 2020 WL 3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

1  unless 'they exceeded the Secretary's authority [or] are arbitrary and

2  capricious.'").

3      There is not a consensus among the district courts as to whether the "clear

4  and convincing" and "specific and legitimate" standards continue to apply.  *See,*

5  *e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

6  Nov. 10, 2020) (applying the specific and legitimate standard under the new

7  regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

8  Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

9  2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

10 regulations displace the treating physician rule and the new regulations control);

11 *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.

12 Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and

13 legitimate nor clear and convincing standard).  This Court has held that an ALJ did

14 not err in applying the new regulations over Ninth Circuit precedent, because the

15 result did not contravene the Administrative Procedure Act's requirement that

16 decisions include a statement of "findings and conclusions, and the reasons or basis

17 therefor, on all the material issues of fact, law, or discretion presented on the

18 record."  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL

19 4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the

20 Court's analysis in this matter would differ in any significant respect under the

ORDER - 12

specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

### 1. Mr. Knight

Mr. Knight, a treating physician assistant,[3] rendered two opinions on Plaintiff's functioning, one in 2018 and one in 2020, Tr. 329-34, 642-43, and Plaintiff challenges the ALJ's consideration of Mr. Knight's 2020 opinion. ECF No. 15 at 10-12. On January 28, 2020, Mr. Knight opined Plaintiff can lift 10 pounds frequently and 20 pounds occasionally; he can stand/walk less than two hours and sit for two hours in an eight-hour day; he can sit for five minutes and stand for 10 minutes before changing positions; he must walk for ten minutes every ten minutes; he needs to shift from sit to stand/walk at will; he would be off-task greater than 50 percent of the time during a work day; he can frequently climb stairs, occasionally stoop and climb ladders, and never twist or crouch; and he would miss four or more days per month of work. Tr. 642-43. The ALJ found Mr. Knight's 2020 opinion was not persuasive. Tr. 22.

First, the ALJ found Mr. Knight's opinion was not supported by examination findings. *Id.* Supportability is one of the most important factors an

---

[3] Licensed physician assistants are now considered acceptable medical sources. *See* 20 C.F.R. §§ 404.1502(a)(8), 416.902(a)(8).

ORDER - 13

1  ALJ must consider when determining how persuasive a medical opinion is.  20

2  C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence

3  and supporting explanations that support a medical opinion, the more persuasive

4  the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The ALJ

5  noted Mr. Knight's examination records from the month he rendered his opinion

6  do not contain any hip or back findings.  Tr. 22.  The visit in January 2020 does not

7  contain any objective evidence of Plaintiff's back or hip impairments.  Tr. 648-49.

8  Mr. Knight's opinion states Plaintiff's right hip arthritis, status post total hip

9  arthroplasty, degenerative disc disease of the lumbar spine, and left femoral

10 acetabular impingement supported the opined limitations.  Tr. 643.  However, Mr.

11 Knight did not cite to any objective evidence of ongoing limitations caused by the

12 impairments.  Plaintiff argues Mr. Knight's opinion is based on years of treating

13 Plaintiff, and it is supported by past examinations and imaging, but Plaintiff does

14 not cite to any specific records to support his argument.  ECF No. 15 at 11.

15 Further, the ALJ found Mr. Knight's opinion was inconsistent with the longitudinal

16 evidence, as discussed *infra.*  The ALJ reasonably found Mr. Knight's opinion was

17 not supported by the contemporaneous examination findings.

18      Second, the ALJ found Mr. Knight's opinion was not consistent with the

19 longitudinal evidence.  Tr. 23.  Consistency is one of the most important factors an

20 ALJ must consider when determining how persuasive a medical opinion is.  20

1   C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is

2   with the evidence from other sources, the more persuasive the opinion is.  20

3   C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  A January 2019 MRI of Plaintiff's

4   lumbar spine showed severe disc loss at L5/S1, a small left lateral disc protrusion,

5   diffuse disc desiccation with moderate loss of disc height at L4/L5, and diffuse

6   disc desiccation with moderately severe loss of disc height at L2/L3.  Tr. 542-43.

7   However, Plaintiff had normal range of motion in his back in September and

8   October 2018, Tr. 21 (citing Tr. 573, 579), and in January 2020, Plaintiff had

9   tenderness and reduced range of motion, but he had normal strength and negative

10  straight leg raises, Tr. 23 (citing Tr. 655-56).  Plaintiff's left hip has generally had

11  normal strength, range of motion, coordination, and sensation, with no tenderness.

12  Tr. 23 (citing, e.g., Tr. 455-56, 464-65).  Plaintiff also had improvement in his

13  right hip and spinal impairments with treatment.  Tr. 22-23 (citing Tr. 634, 676).

14  After his right hip replacement in August 2019, Plaintiff reported being happy with

15  the results and being back to his normal activities without symptoms.  Tr. 23, 634,

16  676.  Plaintiff also reported 80 percent relief in his pain related to his spinal

17  impairment with an injection.  Tr. 657-58, 663.  Plaintiff offers an alternative

18  interpretation of the evidence, pointing to examinations where he had limited range

19  of motion in his back and hips, and argues the opinion is also based on his left hip

20  impairment.  ECF No. 15 at 12.  Imaging of Plaintiff's left hip in 2018 showed

ORDER - 15

only mild arthritis, and cam impingement.  Tr. 298, 322.  In June 2018, Plaintiff

had no tenderness, normal strength, and only mildly limited range of motion in his

left hip, Tr. 303, and in November 2018, he had a normal gait, only mildly

decreased range of motion, and normal strength in his left hip, Tr. 322.  In January

2019, Plaintiff reported he had only minimal symptoms in his left hip.  Tr. 445.

While Plaintiff offers an alternative interpretation, the ALJ reasonably found Mr.

Knight's opinion was inconsistent with the evidence.

Third, the ALJ found Mr. Knight's 2018 opinion was more persuasive than

Mr. Knight's 2020 opinion, as the 2018 opinion more accurately reflected the

longitudinal evidence.  Tr. 23.  Consistency and supportability are the two most

important factors when considering the persuasiveness of medical opinions.  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ found Mr. Knight's

December 2018 opinion, in which he opined Plaintiff could perform sedentary

work, was consistent with the evidence, and more accurately reflected Plaintiff's

limitations.  Tr. 22-23.  Plaintiff argues the ALJ erred in finding the 2018 opinion

more persuasive, when it was less detailed than the 2020 opinion, and the

questionnaire did not ask about additional limitations.  ECF No. 15 at 12-13.

While the 2020 questionnaire has additional checked boxes related to Plaintiff's

limitations, the 2018 opinion contains a summary of Plaintiff's symptoms,

treatment, diagnoses and resulting limitations, recommendations for additional

ORDER - 16

1  consultations/tests, and gives an opinion that despite marked limitations, Plaintiff

2  is capable of sedentary work.  Tr. 329-31.  The ALJ reasonably found Mr. Knight's

3  2018 opinion is more consistent with the evidence than his 2020 opinion.

4       *2. Dr. Mansfield-Blair*

5       On November 17, 2018, Dr. Mansfield-Blair, an examining psychologist,

6  rendered an opinion on Plaintiff's functioning.  Tr. 335-40.  Dr. Mansfield-Blair

7  diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety

8  disorder, and a rule out diagnosis of alcohol use disorder.  Tr. 338-39.  Dr.

9  Mansfield-Blair opined Plaintiff would have difficulty performing

10 detailed/complex tasks, maintaining regular attendance, and completing a normal

11 workday/workweek without interruption from a psychiatric condition, and dealing

12 with the usual stress encountered in the workplace, and Plaintiff otherwise would

13 not have difficulty in the other areas of functioning.  Tr. 339-40.  The ALJ found

14 Dr. Mansfield-Blair's opinion was not persuasive.  Tr. 23.

15      First, the ALJ found Plaintiff's reported symptoms during Dr. Mansfield-

16 Blair's examination were inconsistent with the treatment records.  *Id.*  As

17 supportability is one of the most important factors an ALJ must consider when

18 determining how persuasive a medical opinion is, 20 C.F.R. §§ 404.1520c(b)(2),

19 416.920c(b)(2), a medical provider's reliance on a Plaintiff's unsupported self-

20 report is a relevant consideration when determining the persuasiveness of the

opinion.  The ALJ noted Plaintiff complained of abnormal mood and anxiety during his examination with Dr. Mansfield-Blair, however Plaintiff has not received any significant mental health treatment, Plaintiff has not requested treatment, Plaintiff has denied psychiatric problems, and he has been observed as having normal mood, affect and behavior.  Tr. 23-24, 314, 463, 468, 493.  Plaintiff also had abnormalities on examination, Tr. 314-15, however, as discussed *infra,* Plaintiff's examination was inconsistent with the record as a whole.  Plaintiff argues the ALJ erred because Dr. Mansfield-Blair based her opinion on the objective findings, and not just Plaintiff's reported depression and anxiety.  Any error in the ALJ's analysis was harmless, because the ALJ gave other supported reasons to find Dr. Mansfield-Blair's opinion unpersuasive.  *See Molina,* 674 F.3d at 1115.

Second, the ALJ found Dr. Mansfield-Blair's opinion was inconsistent with the record as a whole.  Tr. 23-24.  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  While Dr. Mansfield-Blair opined Plaintiff has limitations due to his mental health conditions, Plaintiff has generally not complained of mental health symptoms, has not sought treatment, and has not

ORDER - 18

received any significant mental health treatment.  Tr. 23.  Plaintiff's mental status findings have been largely normal.  *Id.* (citing, e.g., 463, 468, 493, 522, 573, 579).  Plaintiff argues the ALJ erred because Dr. Mansfield-Blair documented abnormalities on examination, and the records cited by the ALJ were visits for physical impairments and thus not focused on psychological symptoms.  ECF No. 15 at 14.  However, there is a lack of psychological evidence the ALJ could have cited to due to Plaintiff's lack of mental health complaints and lack of treatment.  As noted by the ALJ, Plaintiff's visits for physical symptoms have largely documental normal mood, affect, and behavior.  Tr. 289, 293, 295-96, 303, 446, 455.  Plaintiff met with behavioral health after complaining of depression in June 2018, but he did not discuss depression or anxiety with her and focused on his pain symptoms.  Tr. 293-96.  There is no evidence Plaintiff ever met with behavioral health again after June 2018.  The ALJ reasonably found Dr. Mansfield-Blair's opinion is inconsistent with the record as a whole.  Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 15 at 15-18.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

1  "First, the ALJ must determine whether there is objective medical evidence of an

2  underlying impairment which could reasonably be expected to produce the pain or

3  other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

4  "The claimant is not required to show that [the claimant's] impairment could

5  reasonably be expected to cause the severity of the symptom [the claimant] has

6  alleged; [the claimant] need only show that it could reasonably have caused some

7  degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

8        Second, "[i]f the claimant meets the first test and there is no evidence of

9  malingering, the ALJ can only reject the claimant's testimony about the severity of

10  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

11  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

12  omitted).  General findings are insufficient; rather, the ALJ must identify what

13  symptom claims are being discounted and what evidence undermines these claims.

14  *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

15  Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

16  symptom claims)).  "The clear and convincing [evidence] standard is the most

17  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

18  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

19  924 (9th Cir. 2002)).

20

ORDER - 20

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 19-20.

*1.  Inconsistent Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 20-21.  An ALJ may not discredit a claimant's

ORDER - 21

symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

First, the ALJ found Plaintiff's physical symptom complaints were inconsistent with the objective evidence. Tr. 19-20. While Plaintiff reports disabling back and hip pain, records have shown improvement in his back and right hip symptoms with treatment, as discussed further *supra*. The medical records have generally documented no more than mildly impaired findings regarding his left hip. Tr. 298, 303, 322. Despite complaints of ongoing pain, Plaintiff has had normal strength, gait, and straight leg raise tests at many appointments. Tr. 20-21, 322, 447, 464, 469, 523.

Second, the ALJ found Plaintiff's mental health symptom complaints were inconsistent with the objective evidence. Tr. 21. Despite complaints of symptoms of depression and anxiety, including cognitive and social deficits, Plaintiff has

ORDER - 22

generally been observed as having normal psychological findings.  Tr. 21, 463, 468, 493, 522, 573, 579.  As discussed further *supra,* Plaintiff has also not ought mental health treatment and generally has not complained of psychological symptoms.  This was a clear and convincing reason, along with the other reasons offered, to reject Plaintiff's symptom claims.

### 2. *Improvement with Treatment*

The ALJ found Plaintiff's symptom claims were inconsistent with his improvement with treatment.  Tr. 20-21.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

First, the ALJ found that Plaintiff had improvement in his right hip symptoms after the May 2019 hip replacement.  Tr. 20.  Plaintiff reported he was happy with the surgery and he was experiencing only mild pain, and the imaging showed good prosthesis alignment.  *Id.* (citing Tr. 489, 493, 527).  Plaintiff reported he was doing well and walking better, though he was observed as having a very slight limp still on June 27, 2019.  Tr. 20 (citing Tr. 627-28).  By August 2019, Plaintiff reported he was back to his normal activities, without any

symptoms.  Tr. 20 (citing Tr. 634).  Plaintiff reported continuing to do well in September 2019, Tr. 676, and then was seen for completion of paperwork for his disability claim in January 2020 but the visit did not include a hip examination, Tr. 647.

Plaintiff argues the ALJ erred in finding he had improvement with treatment, without considering that he had a significant hip impairment for over a year before the surgery.  ECF No. 16 at 16.  Plaintiff applied for benefits on July 31, 2018, alleging disability beginning December 30, 2017.  Tr. 15.  Plaintiff's imaging showed he had almost complete loss of joint space in the right hip by May 15, 2018, and he walked with a limp and had reduced range of motion.  Tr. 20. Plaintiff did not undergo hip replacement surgery until May 1, 2019.  *Id.*

Defendant argues the period during which Plaintiff had more severe limitations due to his hip impairment lasted less than 12 months.  ECF No. 16 at 14-15.  Plaintiff sought care on May 15, 2018, during which he reported worsening hip pain, and imaging showed severe right osteoarthritis, with sclerosis of the right femoral head, and mild flattening of the femoral head, "secondary to severe osteoarthritis or avascular necrosis," but he had an only slightly limited range of motion and slightly diminished strength on the right.  Tr. 288-89.  However, in May 2018, Plaintiff reported staying active helping his parents, including helping with their garden and animals.  Tr. 288-87.  In November 2018, Plaintiff reported

ORDER - 24

improvement for two months with cortisone injections, Tr. 319, and he again had

months of relief after a July 2018 injection, and went back for an injection in

January 2019, Tr. 445.  Plaintiff had surgery for his hip on May 1, 2019, but he

continued to have a limp, lower extremity weakness, several minor loss of balance

incidences when walking on unstable surfaces, and Plaintiff required modifications

in activities due to elevated heart rate and shortness of breath during physical

therapy in June 2019.  Tr. 619-22.  However, in June 2019, Plaintiff reported he is

"climbing up and down a ladder while trimming back a large pine tree," and stated

he bicycled around town and climbed up and down a seven-foot ladder multiple

times per day without difficulty. Tr. 615, 618.  Given Plaintiff did not seek

treatment until May 15, 2018 for his hip, and during that time he was still reporting

being active, and by June 2019, he reported bicycling and climbing ladders

multiple times per day without issues, Plaintiff has not demonstrated there is a

twelve-month period the ALJ should have considered for a closed period of

disability.

Second, the ALJ found Plaintiff had improvement in his back impairment

with treatment.  Tr. 21.  Plaintiff reported an 80 percent relief from pain with a

medial branch block in January 2020.  *Id.* (citing Tr. 657-58).  Plaintiff argues he

did not experience any long-term improvement from the injections.  ECF No. 16 at

16.  However, Plaintiff reported in March 2020 that he was happy with the results

and would call if he decided to proceed with a second injection.  Tr. 663.  There

are no medical records after March 2020, and thus there is no evidence that the

injection did not provide ongoing relief.  The ALJ reasonably found Plaintiff had

improvement in his symptoms with treatment.  This was a clear and convincing

reason to reject Plaintiff's symptom claims.

### 3. Lack of Treatment

The ALJ found Plaintiff's symptom claims were inconsistent with his lack of

treatment for his mental health conditions.  Tr. 21.  An unexplained, or

inadequately explained, failure to seek treatment or follow a prescribed course of

treatment may be considered when evaluating the claimant's subjective symptoms.

*Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  And evidence of a claimant's

self-limitation and lack of motivation to seek treatment are appropriate

considerations in determining the credibility of a claimant's subjective symptom

reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v.

Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering

why plaintiff was not seeking treatment).  When there is no evidence suggesting

that the failure to seek or participate in treatment is attributable to a mental

impairment rather than a personal preference, it is reasonable for the ALJ to

conclude that the level or frequency of treatment is inconsistent with the alleged

severity of complaints.  *Molina*, 674 F.3d at 1113-14.  But when the evidence

ORDER - 26

suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

While Plaintiff alleges limitations due to depression and anxiety, the ALJ noted Plaintiff did not report significant mental health symptoms to his providers and did not request mental health treatment. Tr. 21. Plaintiff argues the ALJ erred in rejecting his symptom claims due to his lack of treatment, because the consultative examiner opined Plaintiff has limitations due to his untreated mental health symptoms. ECF No. 15 at 17-18. However, Plaintiff does not offer any reasoning for why he did not seek mental health care. There is no evidence Plaintiff requested mental health treatment, and after seeing a behavioral healthcare provider once, there is no evidence he ever saw her again, as discussed *supra*. The ALJ reasonably found Plaintiff's allegations were inconsistent with his lack of mental health treatment. This was a clear and convincing reason to reject Plaintiff's symptom claims.

### 4. Activities of Daily Living

The ALJ found Plaintiff's symptom claims were inconsistent with his activities of daily living. Tr. 21. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a

ORDER - 27

substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff's allegations of severe limitations in even basic activities is inconsistent with Plaintiff's reported activities. Tr. 21. Plaintiff has reported mowing the lawn and riding a bicycle without issue. *Id.* (citing Tr. 624, 631). Plaintiff is able to shop, handle his personal hygiene and grooming, and handle some chores. Tr. 18 (citing Tr. 222-29). Plaintiff has also reported being able to sweep, mop, wash dishes, dust, vacuum, clean the bathroom, and prepare meals. Tr. 313. Plaintiff argues the cited activities are not inconsistent with his allegations, because he only does minimal house and yard work, and rides a bike and handle house and yard work for only short periods of time. ECF No. 15 at 18. However, Plaintiff has alleged difficulty walking even one quarter of a mile, bending, standing, kneeling, squatting, and stair climbing, Tr. 226, which is inconsistent with his reported ability to ride his bicycle around town without

issues, and climb up and down a seven-foot ladder multiple time per day without difficulty, Tr. 615, 618.  The ALJ reasonably found Plaintiff's ability to engage in multiple physical activities without difficulty is inconsistent with his allegations of disabling physical limitations.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these grounds.

**C. Step Five**

Plaintiff contends the ALJ's step five findings were based on an improper RFC formulation.  ECF No. 15 at 19-20.

Based on this premise, Plaintiff also argues the ALJ should have found Plaintiff disabled due to an inability to sustain employment.  *Id.* at 20.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims.  *Id.*  For reasons discussed throughout this decision, the ALJ's consideration of the medical opinion evidence and adverse findings regarding Plaintiff's symptom claims are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these grounds.

ORDER - 29

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 14, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 30